DAVID C. MARCUS (158704)
DAVID H. OROZCO (220732)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

STEPHEN D. SUSMAN *(Admitted Pro Hac Vice)*
JOSEPH S. GRINSTEIN *(Admitted Pro Hac Vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Attorneys for Plaintiff
Applied Medical Resources Corp.

Send

FILED
CLERK, U.S. DISTRICT COURT
JUL 12 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

BY FAX

LODGED
2006 JUN 30 PM 3:47

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORP., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ETHICON, INC., a New Jersey Corporation, ETHICON ENDO-SURGERY, INC., an Ohio Corporation, and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC.<br><br>Defendants. | Case No. SACV 03-1329 JVS (MLGx)<br><br>**THE PARTIES' ~~[PROPOSED]~~ PRETRIAL CONFERENCE ORDER**<br><br>DATE: July 10, 2006<br>TIME: 9:00 a.m.<br>PLACE: Courtroom of the Hon. James V. Selna |

DOCKETED ON CM
JUL 17 2006
BY 040

238

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16-6, IT IS ORDERED:

1. The parties are as follows:

A Plaintiff: Applied Medical Resources Corporation, a California corporation;

B Defendants: Ethicon, Inc, a New Jersey Corporation, Ethicon Endo-Surgery, Inc. an Ohio Corporation, and Johnson & Johnson Healthcare Systems, Inc., a New Jersey Corporation (collectively "Johnson & Johnson").

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

Plaintiff's First Amended Complaint, filed December 8, 2003;

Defendants' Answer to Plaintiff's Complaint, filed January 21, 2004.

2. Federal jurisdiction is invoked upon the grounds that this action arises under Section 4 of the Clayton Act, 15 U.S.C. § 15, and 28 U.S.C. §§ 1331 and 1337. Venue in the Central District of California is invoked under 15 U.S.C. §§ 15 and 22, and under 28 U.S.C. §§ 1391(b) and (c) on the grounds that Johnson & Johnson transacts business in this district, Applied's principal place of business is within this district, and a substantial portion of the events giving rise to Applied's claims occurred within this district. Johnson & Johnson admits jurisdiction and venue.

3. The trial is estimated to take twenty trial days. Any time used by a party whether in direct or cross examination will count against that party's time.

(a) Applied believes that opening and closing arguments should count against that party's time. J&J does not believe that opening and closing arguments should count against that party's time.

4. The trial is to be a jury trial. Applied is to provide its proposed jury instructions to Johnson & Johnson by June 30, 2006. Johnson & Johnson will endeavor to provide to Applied its response, including any alternative instructions, as soon as possible, with a target date of July 6, 2006. The parties will attempt to submit to the Court joint jury instructions and any alternative instructions by July 10, 2006, but are likely to seek a brief extension of this deadline.

5. The following facts are admitted and require no proof:

(a) Applied is a company based in Santa Rancho Margarita, California that designs, manufactures and sells medical devices, including trocars.

(b) The two largest group purchasing organizations ("GPO's") in the United States are Premier, Inc. ("Premier") and Novation, L.L.C. ("Novation").

(c) The relevant geographic market for assessing Plaintiff's claims is the United States.

6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

None.

7. This section of the Joint Pretrial Order is intended to apprise the Court in advance of trial of the claims and defenses to be presented at the time of trial. Parties will be precluded from presenting claims or defenses not set forth in this order, in the manner required by this order. Only claims or defenses contained in the complaint and answer and any court authorized

amendment thereto should be included in this pretrial order. If a party chooses to abandon a claim or defense previously alleged, it may do so by not including it in this order.

**Plaintiff:**

**APPLIED'S FIRST AND SECOND CLAIMS AGAINST JOHNSON & JOHNSON FOR ATTEMPTED MONOPOLIZATION AND MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2**

The ultimate facts required to establish these claims are:

a. The relevant markets for Applied's section 2 monopolization claims are the United States' markets for disposable trocars, sutures, and GPO distribution services.

b. Johnson & Johnson has monopoly power in the United States market for sutures. There was a dangerous probability that Johnson & Johnson would achieve its goal of monopolizing the United States markets for disposable trocars or GPO distribution services or Johnson & Johnson had monopoly power in the United States markets for disposable trocars and GPO distribution services. The evidence of this includes Johnson & Johnson's high market share, evidence of Johnson & Johnson's ability to control price and output by foreclosing Applied and competitors from substantial portions of the relevant markets, and evidence of the high barriers to entry in those markets.

c. Johnson & Johnson had the specific intent to achieve monopoly power in the disposable trocar or GPO distribution market. Statements made by Johnson & Johnson and its conduct show that it had the conscious objective of acquiring the power to control prices or to exclude or destroy competition in the relevant market. The natural and probable consequence of Johnson & Johnson's conduct in the relevant market was to give Johnson & Johnson control over prices to exclude or destroy competition, and this was plainly foreseeable by Johnson & Johnson.

d. Johnson & Johnson has unlawfully attempted to monopolize and unlawfully acquired or maintained its monopoly power by excluding competition from the relevant markets. Applied's claim that Johnson & Johnson has unlawfully acquired or maintained its monopoly power is supported by evidence that Johnson & Johnson has engaged in a wide array of exclusionary practices, including: (1) entering into contracts that require any customer who purchase below an endo-mechanical commitment threshold to be penalized with higher prices on all of its purchases of Johnson & Johnson trocars and other endomechanical instruments; (2) entering into contracts that require any customer who purchase below an endo-mechanical commitment threshold to be penalized with higher prices on all of its purchases of Johnson & Johnson sutures; (3) entering into contracts that require any customer who purchase below an endo-mechanical commitment threshold to be penalized with higher prices on all of its remaining purchases of other Johnson & Johnson products as well as products from other manufacturers; (4) entering into sole-source contracts with hospital networks; and (5) entering into sole-source contracts with GPOs that foreclosed rival trocar makers from access to GPO distribution services. Each of these practices, or any combination of them, shows that Johnson & Johnson has unlawfully attempted to acquire, acquired or maintained its monopoly power. In the alternative, the exclusionary conduct element is satisfied in this case by Johnson & Johnson's use of its monopoly power in the suture market to acquire or to maintain monopoly power in the trocar market.

e. Johnson & Johnson's attempt to monopolize or unlawful acquiring or maintaining of its monopoly power has harmed competition and consumers. Absent Johnson & Johnson's exclusionary conduct, consumers in the relevant markets would have had access to trocars that are as good or better than Johnson & Johnson trocars at lower prices. Johnson & Johnson's conduct has enabled it to charge supra-competitive prices and maintain supra-competitive profits.

f. Johnson & Johnson lacks any procompetitive justification for its conduct and cannot establish any such justification. The only justification that Johnson & Johnson has proffered for its sole-source, bundled, market share contracts and bundled rebate programs are (1) competition with U.S. Surgical Corp. (n/k/a Tyco, Inc.); (2) the belief that the contracts provided Johnson & Johnson with optimal profitability; and (3) responding to customers' desires. Such justifications are not cognizable procompetitive justifications and are irrelevant.

g. Applied has suffered damages as a result of Johnson & Johnson's attempt to monopolize or unlawful acquiring or maintaining of its monopoly power. Absent Johnson & Johnson's exclusionary conduct, Applied would have sold more of its trocars and laparoscopic products and earned greater revenues and profits on its sales of its products.

h. The evidence on which Plaintiffs intend to rely for both claims includes:

Exhibits and testimony relating to: The sale, supply and distribution of trocars, endo-mechanical products, sutures, and other medical devices by Plaintiff, Defendants, and other manufacturers of these products during the relevant time frame; Plaintiff's financial health and success in the relevant markets; the pricing of these products; Plaintiff's ability to sell to hospitals constrained by the challenged conduct; Defendants' payment of administrative fees to GPOs; Plaintiff's and Defendants' business and marketing strategies and decisions; the terms and conditions of the challenged contracts; and the injury and harm to consumers or competition with respect to the relevant markets.

**Defendants' Defenses:**

(a) The defenses that Johnson & Johnson plans to raise are trial are[1]:

---

[1] Johnson & Johnson understands that Applied has voluntarily dismissed all claims under Section 1 of the Sherman Act. Johnson & Johnson reserves the right to amend this statement of its defenses in the event that understanding is incorrect.

(1) Applied cannot prove the elements necessary to establish a claim for monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, including but not limited to: (a) a relevant market; (b) the defendants' possession of monopoly power in that market; (c) exclusionary or anticompetitive conduct; and (d) the acquisition or maintenance of monopoly power in a relevant market.

(2) Applied cannot prove the elements necessary to establish a claim for attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, including but not limited to: (a) a relevant market; (b) specific intent to monopolize; (c) exclusionary or anticompetitive conduct; and (d) a dangerous probability of acquiring or maintaining monopoly power in a relevant market.

(3) The challenged contracts of Johnson & Johnson are lawful *per se* because the pricing available pursuant to those contracts has at all times been above any appropriate measure of Johnson & Johnson's costs for each of the products included in the contract.

(4) The challenged bundled contracts of Johnson & Johnson are lawful *per se* because they do not involve predatory below-cost pricing or an unlawful tie and because at least one other competitor has at all times been capable of offering a bundle including substantially all of the products sold pursuant to Johnson & Johnson's challenged contracts.

(5) The procompetitive effects of the challenged conduct outweigh the anticompetitive effects, if any.

(6) Applied cannot show that (A) it has been foreclosed from a relevant market, (B) it has been injured in fact, or (C) that it has suffered any legally cognizable and ascertainable damages.

(7) Applied cannot show that J&J's challenged conduct harmed consumers or competition in a relevant market.

(8) Any claim for damages incurred prior to September 1999 or after that date attributable to conduct occurring before that date are barred by the applicable statute of limitations, 15 U.S.C. § 15b.

(b) The ultimate facts required to establish these defenses are:

(1) Applied will not establish the existence of relevant United States markets for disposable trocars, sutures, or so-called GPO distribution services.

(2) Assuming, *arguendo*, that Applied did establish the existence of such relevant markets, Applied will not establish that Johnson & Johnson has, or that there was a dangerous probability that Johnson & Johnson would achieve, monopoly power in the United States markets for disposable trocars, sutures, or GPO distribution services.

(3) Applied will not establish that Johnson & Johnson had the specific intent to achieve monopoly power in the alleged United States markets for disposable trocars or GPO distribution services. It was neither the natural, probable, nor foreseeable consequence of Johnson & Johnson's conduct that it would obtain control over prices or exclude or destroy competition in those markets.

(4) Applied will not establish that Johnson & Johnson unlawfully attempted to monopolize or unlawfully acquired or maintained monopoly power in any relevant market by excluding competition. The challenged conduct by Johnson & Johnson's was not predatory or exclusionary because: (a) Johnson & Johnson's prices were at all times above any appropriate measure of its costs; (b) the anticipated benefits of such conduct were not dependent on any tendency to discipline or eliminate competition; (c) Johnson & Johnson's contracts

were not exclusive or exclusionary insofar as they allowed purchases from other suppliers and were terminable on short notice; (d) Johnson & Johnson's conduct did not substantially foreclose competition in the alleged relevant markets for disposable trocars or GPO distribution services; and (e) Tyco (and/or its predecessors) has (and/or have) at all times relevant hereto been capable of selling substantially all of the products sold by Johnson & Johnson pursuant to the challenged contracts.

(5) Applied will not establish that Johnson & Johnson's conduct harmed competition and/or consumers. Johnson & Johnson's conduct was the result of competition and had the effect of enhancing consumer welfare by lowering or restraining overall prices for endomechanical and wound closure product in relation to what those prices would have been if the practices in question were deemed unlawful. Johnson & Johnson has not charged supra-competitive prices or maintained supra-competitive profits.

(6) Applied has not suffered any legally cognizable injury or damages as proximate result of Johnson & Johnson's challenged conduct. Applied has not been substantially foreclosed from the alleged relevant United States markets for disposable trocars or GPO distribution services. Applied is and has been throughout the relevant period been a viable competitor in the marketplace. Applied will not establish any significant risk that it will be driven out of business or has been rendered unable to compete profitably for business.

(7) Applied's complaint in this action was filed on September 5, 2003.

(c) The evidence on Johnson & Johnson intends to rely for these defenses includes exhibits and testimony relating to:

(1) The sale, supply, and distribution of trocars, endomechanical products, sutures and other wound closure products, and other medical devices by Applied, Johnson & Johnson, and other manufacturers or suppliers of these products during the relevant time frame;

(2) The scope and features of, and relative preference for, the product offerings of Applied, Johnson & Johnson, and other manufacturers of the relevant products;

(3) The negotiation, terms, conditions, and operation of the challenged contracts;

(4) Applied's (and others') ability or inability to sell to hospitals subject to the challenged contracts;

(5) The role and function of GPOs and others in contracting for the sale of medical devices, including trocars, endomechanical products, sutures and other wound closure products;

(6) Applied's financial health and success in the relevant markets;

(7) The pricing of the products in question; and

(8) Applied's and Johnson & Johnson's business, marketing, and sales capabilities, strategies and decisions.

9. Discovery is complete. The parties stipulate to the authenticity of all party documents produced from that party's files.

(a) Applied believes that any document produced from a party's files also should be deemed authenticated. Johnson & Johnson disagrees.

10. The joint exhibit list of the parties will be filed under separate cover by July 10, 2006. The parties agree that they can supplement the joint exhibit list to include any documents inadvertently overlooked if sufficient notice is provided. The parties are continuing to meet and confer regarding objections to their respective exhibits, and shall file their objections to exhibits on or before July 10,

2006. The parties retain all objections to the admissibility, relevance or materiality of any of the exhibits, or portions thereof, listed in the joint trial exhibit list or otherwise proffered at trial, regardless of which party sponsored the listing or proffer.

A The parties stipulate to the admissibility of contracts, electronic data produced by the parties, and Board of Director minutes and presentations.

B Applied believes that any exhibit listed on a party's exhibit list that has not specifically been objected to by the other party should be admitted into evidence. Johnson & Johnson opposes Applied's position and believes that, absent specific agreement, exhibits should only be admitted in connection with the testimony of a sponsoring witness.

11. Witness lists of the parties have been filed under separate cover as required Local Rule 16-5. Except for good cause shown only the witnesses identified in the lists will be permitted to testify (other than for rebuttal). Both parties reserve the right to call witnesses from the other party's list. The parties have agreed to give three days notice for any witness previously identified as a "likely" to call witness. The parties have agreed to give five days notice for any witness previously identified as "less likely" to be called.

12. The parties are continuing to meet and confer regarding testimony by witnesses via deposition testimony. The parties shall mark depositions of any witnesses testifying by way of deposition testimony in accordance with Local Rule 16.2-7 by July 14, 2006 and shall lodge such depositions with the Clerk as required by Local Rule 32-1.

(a) Applied believes that before trial commences, the parties should inform one another as to which of their party witnesses whose deposition testimony has been designated will be called to

testify live. J&J will endeavor to do so, but is not prepared at this point to commit that it will do so in all instances.

The following law and motion matters and motions in limine are pending or contemplated:

(a) List of Applied's Motions in Limines

1. Plaintiff Applied Medical Resources Corp's Motion in Limine No. 1
2. Plaintiff Applied Medical Resources Corp's Motion in Limine No. 2.*
3. Plaintiff Applied Medical Resources Corp's Motion in Limine No. 3*
4. Plaintiff Applied Medical Resources Corp's Motion in Limine No. 4
5. Plaintiff Applied Medical Resources Corp's Motion in Limine No. 5

(b) List of J&J's Motions in Limines

1. Defendants' Motion in Limine No. 1 to Exclude Hearsay Evidence of Why Hospitals Did Not Purchase From Applied
2. Defendants' Motion in Limine No. 2 to Exclude Evidence Relating to Applied's Hospital Evaluation Forms
3. Defendants' Motion in Limine No. 3 to Exclude Certain Inflammatory, Conclusory and Self-Serving Statements
4. Defendants' Motion in Limine No. 4 to Exclude Evidence About Congressional Hearings And Government Investigations

5. Defendants' Motion in Limine No. 5 to Exclude Evidence About GPO Codes of Conduct

6. Defendants' Motion in Limine No. 6 to Exclude Certain Evidence And Arguments Relating to Research Funding, Educational Grants, Teaching Fees, and Charitable Contributions

7. Defendants' Motion in Limine No. 7 to Bar Argument That the Payment of Administrative Fees to GPOs Illegal

8. Defendants' Motion in Limine No. 8 to Exclude Evidence of FDA Medical Device Reports*

9. Defendants' Motion in Limine No. 9 to Exclude Evidence Relating to Settlement Agreements and Other Pending Litigation

10. Defendants' Motion in Limine No. 10 to Exclude Evidence Relating to Prior Patent Settlement Agreements and Licenses

11. Defendants' Motion in Limine No. 11 to Preclude Use of the Carve Out Amendments as Evidence of Liability

12. Defendants' Motion in Limine No. 12 to Exclude Plaintiffs' Expert Damages Testimony

13. Defendants' Motion in Limine No. 13 to Exclude the Claims of Damages Outside the Statute of Limitations

14. Defendants' Motion in Limine No. 14 to Limit the Testimony of Professor Elhauge Pursuant to *DAUBERT* and Rules 702 704 and 403

15. Defendants' Motion in Limine No. 15 to Exclude Hearsay Evidence From Third Party Consultants

*The parties have reached stipulations mooting Plaintiff's motions in limine

nos. 2 and 3 and Defendants' motion in limine no. 8. The parties will promptly file those stipulations with the Court.

13. Bifurcation.

Neither party believes that bifurcation would advance the interests of expedition and judicial economy recognized in Fed. R. Civ. P. 42(b).

14. Applied believes that that jury instructions should be read at the close of evidence but before the closing arguments. Applied also believes that limited instructions should be provided to the jury before the parties present their opening statements. Johnson & Johnson believes that final jury instructions should be delivered after closing arguments. Johnson & Johnson will inform the Court of its position regarding instructing the jury prior to opening statements once Applied has tendered its proposed instructions and the parties have discussed them.

///

///

///

15. The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this pretrial conference order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: June 30, 2006

SUSMAN GODFREY LLP

By: [signature]
David C. Marcus
Attorneys for Plaintiff
APPLIED MEDICAL RESOURCES CORP.

Dated: June 30, 2006

SIDLEY AUSTIN LLP

By: [signature]
David C. Giardina
Attorneys for Defendants
ETHICON, INC., ETHICON ENDO-SURGERY, INC., and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC.

IT IS SO ORDERED:

Dated: 7/10, 2006.

[signature]
Hon. James V. Selna
UNITED STATES DISTRICT JUDGE

# PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 950, Los Angeles, California 90067-6029.

On June 30, 2006, I served the foregoing document(s) described as follows:

**THE PARTIES' [PROPOSED] PRETRIAL CONFERENCE ORDER**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

____ BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand to the offices of the addressee.

XX BY FEDERAL EXPRESS OR OVERNIGHT COURIER

____ BY FAX
I served by facsimile as indicated on the attached service list.

XX BY ELECTRONIC MAIL
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

Executed on June 30, 2006, at Los Angeles, California

____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

XX (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Helen Danielson
(Type or Print Name)

[signature]
(Signature)

# SERVICE LIST

**ATTORNEYS FOR PLAINTIFF**

David C. Marcus
David H. Orozco
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Stephen D. Susman
Joseph S. Grinstein
Jason P. Fulton
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jason P. Fulton
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 4100
Dallas, Texas 75202-3775
Telephone: (214) 754-1900
Facsimile: (214) 754-1933

**ATTORNEYS FOR DEFENDANTS**

John W. Treece
David C. Giardina
SIDLEY AUSTIN LLP
10 S. Dearborn Street, 48th Floor
Chicago, Illinois 60603
Telephone: (312) 853-2937
Facsimile: (312) 853-7036

Thomas P. Hanrahan
Michelle B. Goodman
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

James W. Quinn
Scott Martin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

**Attorneys for Defendants Ethicon, Inc.,Ethicon Endo-Surgery, Inc., and Johnson & Johnson Health Care Systems, Inc.**